LANDRY, Judge.
Appellant, Lawrence Bibbins, appeals the judgment of the trial court dismissing his demand for workmen’s compensation benefits on the ground that the injury sustained did not occur within the scope and during the course of appellant’s employment by defendant, Feliciana Pulpwood, Inc. (Feli-ciana), the insured of co-defendant, Employers Insurance of Wausau (Employers). The trial court reached the decision indicated on the ground that appellant was in the act of repairing his personally owned truck at the time the injury occurred. We reverse and render judgment in favor of plaintiff.
It is conceded that appellant sustained a left inguinal hernia on September 23, 1969, while replacing the left front tire of a log hauling truck which tire had been removed to permit repairs to the vehicle’s steering mechanism. Although appellant was engaged to haul logs for Feliciana, appellant had not in fact worked in this capacity on the day of the accident.
There is no dispute as to the salient facts. Feliciana is engaged in the business *293 of selling pulpwood and logs. On November 25, 1968, an arrangement was made between appellant, who has approximately an eighth grade education, and Feliciana’s President, George Burger, whereby appellant commenced operations for Feliciana’s account. On the above mentioned date, Burger made complete financial arrangements whereby appellant was furnished a log truck by Nelson and East Ford Motor Company. Appellant made no payment whatsoever on the purchase price. Title to the vehicle was placed in appellant’s name and Feliciana took a chattel mortgage from appellant for the full purchase price. All title documents were retained in Feliciana’s possession. Plaintiff’s uncontradicted testimony is that Burger told plaintiff the truck would become plaintiff’s when the vehicle had been driven 60,000 miles. Burger also furnished plaintiff two power saws and a tractor as aids to plaintiff’s cutting and hauling operations. These devices were also paid for by Feliciana. Plaintiff engaged and paid for his own labor which normally consisted of two assistants. Plaintiff was free to cut pulpwood or logs on lands belonging to any person whomsoever, but was required to deliver his entire output to destinations selected by Burger. In addition, plaintiff could at any time cut and haul from lands belonging to Feliciana. Plaintiff could work when and where he chose. His remuneration was $16.00 per cord for either pulpwood or logs delivered. Each load contained four or five cords. Plaintiff made two or three loads daily when working. As deliveries were made to destinations specified by Burger, the sum of $10.00 per load was deducted to pay for the truck, $2.00 for the saws and $4.00 for the tractor. Feliciana also deducted from the value of each loan the stump-age due the owner on whose lands the loads were cut. Plaintiff paid for all oil and gas used in the operation, and also paid for minor repairs when necessary. Major repairs, when required, were arranged and paid for by Burger, pursuant to arrangements with a garage or service station of Burger’s choice, and the cost thereof deducted from amounts due plaintiff. On one occasion, plaintiff had the rear axle of the truck repaired by a mechanic of plaintiff’s selection, the cost thereof being advanced by Feliciana. From the operation, plaintiff earned approximately $40.00 net weekly. Plaintiff was under strict instructions from Burger not to sell logs or pulp-word to any concern other than Feliciana. On one occasion when plaintiff disregarded -this • standing mandate, he was severely reprimanded by Burger.
The above arrangement continued without interruption until the day of the accident. On this occasion, plaintiff, pursuant to Burger’s instruction, had taken the truck to Bates Esso Service for repair of its steering apparatus. When the mechanic completed the repair, he advised plaintiff that plaintiff would have to replace the left front wheel which had been removed to correct the defect. While replacing the wheel, which weighed approximately seventy-five pounds, plaintiff experienced a pin point pain in his left side. Office visits that same day to Doctors Berthelot and Nasca disclosed that appellant had sustained a left inguinal hernia. The record is devoid as to medical testimony regarding the extent and duration of plaintiff’s disability. Plaintiff himself testified that he was discharged from medical treatment on January 5, 1970.
Following the accident, Burger requested plaintiff to surrender the truck so that Burger could put someone else on it to work it, and thus keep up the payments due on the vehicle. Plaintiff complied and has not seen the truck since that time.
Defendant’s initial contention that plaintiff was an independent contractor has been abandoned. The trial court found in fact that plaintiff was an employee of Fel-iciana. In this finding, we concur. Recovery was denied plaintiff in the lower court on the finding that plaintiff, who had hauled no pulpwood or logs for defendant either on the day of the accident or a day or two previous, was not acting within the scope or during the course of *294 his employment by Feliciana. It was in this conclusion that the lower court erred.
Plaintiff correctly contends that the general conditions imposed upon plaintiff, and the degree of control exercised over plaintiff by Burger, dictates the finding that plaintiff was acting within the scope and during the course of his employment by Feliciana at the time of the accident. In this respect, we note that Feliciana’s president, Burger, rigidly controlled disposition of plaintiff’s work product. Burger also controlled the making of all major repairs to the truck including when, where and how such repairs would be made. It is clear that in so doing, Burger was furthering Feliciana’s interests which depended upon all of its supply trucks remaining operational. It is also significant that when plaintiff was injured, he was engaged in repairing the vehicle pursuant to Burger’s approval, and at a place designated by Burger. We likewise find that, as between the parties, title to the truck was placed in plaintiff’s name solely to suit the employer’s convenience. Burger held the title papers. As between the parties, plaintiff’s alleged title was not to be recognized until the vehicle had been operated for 60,000 miles. When plaintiff became disabled, it suited Feliciana’s purposes to require that plaintiff surrender the vehicle for use by another party in Feliciana’s business.
In finding that plaintiff herein was not acting within the scope or during the course of his employment at the time of injury, the lower court considered McKay v. Crowell & Spencer Lumber Co., La.App., 189 So. 508, controlling. We find McKay, above, inapposite in that it is factually distinguishable. In McKay, above, plaintiff-employee was engaged in hauling logs for defendant-employer in plaintiff’s own truck when the vehicle developed mechanical difficulty. The truck was unloaded. On the following day, while the truck was being towed to a nearby town for repairs, plaintiff was injured. The court in McKay, above, held that plaintiff was not acting within the scope and during the course of his employment at the time of the accident. Rather, the court found that when injured, plaintiff was pursuing a personal mission, namely, having his own vehicle repaired.
In McKay, above, the employee was the undisputed owner of the vehicle in question. In effecting the repairs concerned, plaintiff in McKay was not acting pursuant to his employer’s instructions. In the instant case, we find that, as between employer and employee, the employer considered itself the legal owner of the vehicle at the time of the accident. The fact that title to the truck was in the employee was a circumstance permitted solely to suit the employer’s purposes. The employee, in this instance, did not have unrestricted use of the truck, and the destination of his loads were strictly controlled by the employer. When the vehicle needed major repairs, the employer determined where they would be made. The repairman making the repairs which resulted in the employee’s injury had been chosen by the employer. That plaintiff was owner of the truck in name only, insofar as Feliciana is concerned, is attested by the fact that upon plaintiff’s injury, the employer took sole possession of the truck as if it were its own and used the vehicle for its purposes. We conclude, therefore, that plaintiff’s duties not only included hauling for defendant, but also involved keeping the truck operational to serve the employer’s business. Under the circumstances, it is reasonable to deduce that had plaintiff failed to maintain the vehicle in satisfactory operating condition, defendant would undoubtedly have demanded the surrender of the vehicle as was done when plaintiff became injured and could not continue his employment. We find that plaintiff herein was advancing the interests of his employer at the time of plaintiff’s injury. Plaintiff was, therefore, acting within the scope and during the course of his employment at the time of the disabling accident.
The record in this case is devoid of medical testimony establishing the extent and duration of plaintiff’s injury. *295 Normally, under such circumstances, we would remand this matter to the trial court for further proceedings to determine these issues. In this instance, however, defendant acknowledges that plaintiff sustained a hernia on the date and under the circumstances indicated. Defendant likewise concedes that plaintiff’s condition was corrected by surgery following which plaintiff was under medical treatment for some time. Plaintiff virtually concedes that his total disability resulting from said condition did not continue beyond the date of his medical discharge, which plaintiff himself testified was January 4, 1970. We judicially note that a hernioplasty produces total temporary disability to one actively engaged in logging. Defendant concedes in its brief that if plaintiff is entitled to compensation, plaintiff’s disability was for a period of four and one-half months. We likewise note that plaintiff testified that his net earnings averaged $40.00 weekly. Defendant, however, introduced detailed evidence showing the gross amount paid plaintiff weekly together with all deductions therefrom. From this evidence, it conclusively appears that plaintiff’s net earnings averaged approximately $90.00 per week. Under the circumstances peculiar to this case, we find that a remand of this matter would serve no useful purpose and would result only in delay and additional expense to the parties involved. We find therefore that plaintiff is entitled to compensation benefits for temporary total disability in the sum of $45.00 weekly for the period September 23, 1969, to January 4, 1970, with legal interest thereon from due date of each weekly payment, until paid.
It is stipulated that plaintiff personally incurred medical and travel expense in the sum of $32.00 directly related to plaintiff’s injury. Plaintiff is entitled to judgment in that amount also.
In rendering judgment herein, under the circumstances noted, we do so pursuant to the authority vested in us by LSA-C.C.P. art. 2164.
It is ordered, adjudged and decreed that the judgment of the trial court rejecting plaintiff’s demands is reversed and set aside, and judgment rendered herein in favor of plaintiff, Lawrence Bibbins, and against defendant, Feliciana Pulpwood, Inc., awarding plaintiff workmen’s compensation benefits for total temporary disability in the sum of $45.00 weekly for the period September 23, 1969 to January 4, 1970.
It is further ordered, adjudged and decreed that judgment be rendered herein in favor of plaintiff, Lawrence Bibbins, and against defendant, Feliciana Pulpwood, Inc., in the full sum of $32.00, together with legal interest thereon from date of judicial demand, until paid; all costs of these proceedings to be paid by defendant, Feliciana Pulpwood, Inc.
Reversed and rendered.